ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| ANTONELLA DOLORES DI LAURO ROSALES, PASQUALE DI LAURO DEL VECCHIO, SU ESPOSA YUDY COROMOTO ROSALES RINCÓN, TAMBIÉN CONOCIDA POR YUDY ROSALES DE DI LAURO, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Recurrentes<br><br>v.<br><br>WIGTHMAN & FARINA, L.L.C., JOSÉ R. CINTRÓN COLÓN, SU ESPOSA JUANA DOE I, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS, CAROL JENNIFER WIGHTMAN CÁRDENAS, TAMBIÉN CONOCIDA POR CAROL JENNIFER PARRISH Y CAROL J. PARRISH, SU ESPOSO FRANK PARRISH, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS, VICTORIA CAROLINA OSORIO SÁNCHEZ, SU ESPOSO JOHN DOE I, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS, GIULA FARINA OSORIO, FIORELLA FARINA OSORIO, VICTORIA CAROLINA OSORIO SÁNCHEZ, EN REPRESENTACIÓN DE SUS HIJAS  MENORES DE EDAD GIULA FARINA OSORIO y FIORELLA FARINA OSORIO, ESPERANZA MARINA PARRA, STEPHANY PAOLA WIGHTMAN URDANETA, MICHELL PAOLA WIGHTMAN URDANETA<br><br>Recurridos | TA2026CE00401 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2023CV00974<br><br>Sala: 802<br><br>Sobre: Sentencia Declaratoria, Difamación, Daños y Perjuicios, y Cobro de Dinero |

[1] Mediante Orden Administrativa OATA-2026-063 emitida el 2 de junio de 2026, se designó al Hon. Juan A. Robles Adorno en sustitución de la Hon. Ivelisse M. Domínguez Irizarry.

Panel integrado por su presidente, el Juez Cruz Hiraldo, el Juez Sánchez Báez y el Juez Robles Adorno

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de junio de 2026.

Compareció la Sra. Antonella Dolores Di Lauro Rosales (en adelante, "señora Di Lauro Rosales"), el Sr. Pasquale DI Lauro Del Vecchio y la Sra. Yudy Coromoto Rosales Rincón (en conjunto, "demandantes" o "peticionarios") mediante recurso de *Certiorari* de epígrafe presentado el 2 de abril de 2026. Nos solicitó la revocación de la *Resolución* emitida el 12 de enero de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "foro de instancia"). En el aludido dictamen, el foro de instancia descalificó al Lcdo. Virgilio Ramos Tomasini como representante legal de los peticionarios.

Por los fundamentos expuestos a continuación, se **expide** el auto de *Certiorari* y se **revoca** la *Resolución* recurrida. En consecuencia, se **devuelve** el caso al foro de instancia para la continuidad de los procedimientos.

**-I-**

El 29 de marzo de 2023, el Lcdo. Virgilio Ramos Tomasini —en representación de los demandantes— presentó una *Demanda Jurada[2]* sobre entredicho provisional y un interdicto preliminar contra la compañía Wightman & Farina, LCC (en adelante, "la compañía"), el Lcdo. José R. Cintrón Colón, así como los miembros de la Sucesión del Sr. Rodolfo Farina Escalante y el Sr. Jorge F. Wightman Peñaranda (en conjunto, "demandados" o "recurridos"). En esencia, alegaron que los demandados ejercieron control de la compañía sin autoridad legal, a saber: (1) celebraron una asamblea

---

[2] SUMAC-TPI, entrada núm. 1.

extraordinaria nula; (2) destituyeron ilegalmente a la señora Di Lauro Rosales; (3) gestionaron la venta no autorizada del principal activo de la compañía, (4) sustrajeron más de $80,000 de las cuentas de la compañía para uso personal; y (5) difundieron acusaciones falsas y difamatorias imputándole a la señora Di Lauro Rosales un retiro no autorizado de $32,000.00 de la cuenta de la compañía. Por ello, los demandantes solicitaron al foro de instancia la concesión de entredicho provisional e interdicto preliminar y permanente, para detener la venta de la propiedad y prevenir la disposición indebida de fondos. Además, solicitaron que se declarara: (i) que la señora Di Lauro Rosales es la única miembro y administradora legítima de la compañía, (ii) que todas las actuaciones de los demandados en alegada representación de la compañía son nulas, y (iii) que se ordene la restitución de fondos, así como el pago de daños, daños punitivos, indemnización por difamación, cobro de dinero prestado, costas y honorarios.

Luego de varios trámites procesales, el 30 de enero de 2025, la Sucesión del Sr. Jorge F. Wightman Peñaranda presentó *Moción de descalificación*.[3] En esta solicitaron la descalificación del Lcdo. Virgilio Ramos Tomasini como representante legal de los demandantes, ya que este asumió un rol dual de abogado-notario al autorizar dos resoluciones corporativas otorgadas por la señora Di Lauro Rosales, las cuales constituyen el objeto principal de las reclamaciones del presente caso.

El 19 de febrero de 2025, los demandantes instaron su *Moción en cumplimiento de orden y en oposición a solicitud de descalificación*.[4] Explicaron que las referidas resoluciones corporativas tenían el propósito de autorizar a la señora Di Lauro Rosales y al Sr. Sergio Gaetano Di Lauro Rosales, como

---

[3] *Id.,* entrada núm. 153.
[4] *Id.,* entrada núm. 179.

representantes de Wightman & Farina, LLC, a vender una finca localizada en Caguas y manejar las cuentas bancarias de la corporación. Por lo cual, alegaron que tales resoluciones no versan sobre el mismo asunto de la demanda ni son el objeto principal de la reclamación. En alternativa, sostuvieron que, aun si guardaran relación con la demanda, el ordenamiento jurídico permite que un notario actúe posteriormente como abogado en un litigio sobre un mismo asunto cuando su intervención notarial se limitó a dar fe de la autenticidad de las firmas, siempre que dichas firmas ni el documento que las contiene constituyan el objeto principal de la reclamación.

El 31 de marzo de 2025, el foro de instancia celebró mediante videoconferencia una vista de descalificación de representación legal en la cual ambas partes tuvieron oportunidad de argumentar sus respectivas posiciones. Al concluir la vista, el foro de instancia expresó que resolvería por escrito.[5]

Así las cosas, el foro de instancia emitió *Resolución* el 12 de enero de 2026, notificada al día siguiente, en la cual descalificó al Lcdo. Virgilio Ramos Tomasini como representante legal de los demandantes.[6]  Tal determinación se fundamentó como sigue:

> [...] El licenciado ha actuado como notario de la corporación Wightman & Farina LLC con anterioridad a la presentación de la Demanda de autos. A pesar de que el licenciado Ramos Tomasini indica que no están en controversia los Certificados de Resolución ni su contenido, no tenemos certeza de eso en esta etapa de los procedimientos. El caso se encuentra en etapa de descubrimiento de prueba y se solicitan remedios relacionados con la corporación [...]
> Reconocemos el derecho de la parte demandante a estar representada por el abogado de su preferencia y a tener su día en corte. No obstante, en este caso en particular, tomando en consideración las controversias planteadas relacionadas a la corporación Wightman & Farina LLC, las actuaciones de Antonella DiLauro Rosales en relación a la misma luego del fallecimiento de Rodolfo Farina Escalante y Jorge Wightman Peñaranda, así como otras relacionadas, nos llevan a concluir que para fines de evitar hasta la apariencia de conducta impropia, resulta deseable que el

---

[5] *Id.*, entrada núm. 202.
[6] *Id.*, entrada núm. 222.

Lcdo. Virgilio Ramos Tomasini se abstenga de representar a la parte demandante en este caso.[7]

En desacuerdo, el 27 de enero de 2026, los demandantes presentaron *Moción de reconsideración y de solicitud de determinaciones de hechos iniciales y/o adicionales y de derecho relacionadas con la descalificación del representante legal de los demandantes*.[8] Alegaron que el foro de instancia concluyó erróneamente que el Lcdo. Virgilio Ramos Tomasini representó legalmente a la compañía al autenticar la firma de una persona que no forma parte del presente caso en dos resoluciones corporativas de dicha compañía. Esto es, sostuvieron que el Lcdo. Virgilio Ramos Tomasini únicamente autenticó la firma del Sr. Sergio Gaetano Di Lauro Rosales y que, por lo tanto, de existir alguna relación profesional, esta sería exclusivamente con él y no con la compañía. Además, argumentaron que un notario no se convierte en representante legal de una parte por el mero hecho de autenticar su firma en una resolución, sino que su responsabilidad se limita a acreditar que esa persona, en una fecha determinada, estampó ante él su firma en un documento específico y que dicha persona es quien dice ser. Asimismo, adujeron que las firmas en las mencionadas resoluciones corporativas no estaban en controversia y que dichas resoluciones no constituyen el objeto principal de la reclamación ni guardan relación con los asuntos realmente en disputa. Es decir, que las resoluciones corporativas no tienen ninguna pertinencia sobre las reclamaciones.

El 17 de febrero de 2026, los demandados presentaron su oposición a la solicitud de reconsideración.[9] Argumentaron que la actuación notarial del Lcdo. Virgilio Ramos Tomasini puede ser

---

[7] *Id.*, pág. 7.
[8] *Id.*, entrada núm. 226.
[9] *Id.*, entrada núm. 229.

objeto de descubrimiento y que su función dual constituía una apariencia de conducta impropia.

El 3 de marzo de 2026, el foro de instancia emitió *Orden* mediante la cual denegó la solicitud de reconsideración y determinaciones de hechos iniciales o adicionales.

Aun inconformes, el 2 de abril de 2026, los demandantes acudieron ante nos mediante el recurso de epígrafe y esbozaron los señalamientos de error siguientes:

> PRIMER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESCALIFICAR Al REPRESENTANTE LEGAL DE LA PARTE PETICIONARIA POR ENTENDER QUE UN NOTARIO REPRESENTA LEGALMENTE A UNA CORPORACIÓN AL AUTENTICAR LA FIRMA DE UNA PERSONA EN UNAS RESOLUCIONES CORPORATIVAS DE DICHA ENTIDAD[.]
>
> SEGUNDO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESCALIFICAR A UN ABOGADO POR AUTENTICAR LA FIRMA DE UNA PERSONA EN UNAS RESOLUCIONES CORPORATIVAS CUANDO NO ESTÁ EN CONTROVERSIA LAS FIRMAS EN LAS RESOLUCIONES CORPORATIVAS NI LAS RESOLUCIONES CORPORATIVAS DONDE APARECEN LAS FIRMAS SON EL OBJETO PRINCIPAL DE LAS RECLAMACIONES[.][10]

Por su parte, el 20 de abril de 2026, la Sucesión de Jorge Wightman Peñaranda presentaron su *Oposición a expedición de certiorari.*[11]

Así pues, perfeccionado el recurso, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Descalificación**

La Regla 9.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 9.3, establece que el tribunal "en el ejercicio de su poder inherente de supervisar la conducta de los abogados y abogadas que postulan ante sí, podrá, a iniciativa propia o a solicitud de parte [...] descalificar a un abogado o abogada que incurra en conducta que

---

[10] SUMAC-TA, entrada núm. 1, págs. 9-10.
[11] *Id.*, entrada núm. 5.

constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el Tribunal, sus representados(as) o sus compañeros(as) abogados(as)". En otras palabras, el foro de instancia tiene la facultad para "ordenar la descalificación de un representante legal cuando ello abone a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos". *Job Connection Center v. Sups. Econo*, 185 DPR 585, 596 (2012).

En ese sentido, la descalificación es: (1) una medida preventiva para evitar posibles infracciones a las Reglas de Conducta Profesional de Puerto Rico; y (2) es un mecanismo para evitar actos disruptivos de los abogados durante el trámite de un pleito provenientes del abogado. *Oril v. El Farmer, Inc.,* 204 DPR 229, 241 (2020). Sin embargo, el procedimiento de descalificación de un abogado no constituye, por sí mismo, una acción disciplinaria ni menoscaba el poder inherente del Tribunal Supremo de disciplinar a los miembros de la clase togada. *Id.*; además, véase *Job Connection Center v. Sups. Econo,* supra.

Ahora bien, el Tribunal Supremo ha sostenido que el remedio de la descalificación no debe imponerse ligeramente, ya que podría afectar negativamente los derechos de las partes, el trámite de los procedimientos el derecho a la libre selección de representación legal y los derechos del representante legal que es descalificado. *Job Connection Center v. Sups. Econo,* supra, págs. 596-597. Por tanto, el procedimiento de descalificación, por tratarse de un remedio drástico, solo procede cuando resulte estrictamente necesario y no existan otras medidas menos onerosas que garanticen la integridad del trámite judicial y el trato justo a las partes. *Id.*, pág. 597.

Sabido es que los procedimientos de descalificación pueden iniciarse por orden del tribunal *motu proprio* o a solicitud de parte. *Oril v. El Farmer, Inc.,* supra, pág. 242. No obstante, "la mera

presentación de una moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión". *Job Connection Center v. Sups. Econo,* supra, pág. 597. Una vez la descalificación es solicitada por la parte adversa, el Tribunal debe evaluar la totalidad de las circunstancias de acuerdo con los factores siguientes:

> (i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos.

*Oril v. El Farmer, Inc.,* supra, págs. 242-243 citando a *Job Connection Center v. Sups. Econo,* supra, págs. 597-598.

Además de sopesar la totalidad de las circunstancias y los criterios anteriores, el Tribunal debe analizar si la descalificación le causaría perjuicio o desventaja indebida al solicitante. *Id.*

Por último, se ha reconocido que las ordenes de descalificación son revisables interlocutoriamente mediante recurso de *Certiorari* ante el Tribunal de Apelaciones, "si se demuestra que hubo un craso abuso de discreción, que el foro primario actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial". *Job Connection Center v. Sups. Econo,* supra, pág. 601.

**B. Función dual de abogado y notario**

La Regla 5 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV reconoce la incompatibilidad entre las funciones de abogado y notario. En particular, como regla general, prohíbe que: (1) un notario que haya autorizado un documento público luego represente a una de las partes otorgantes para reclamar las obligaciones derivadas de ese mismo documento; (2) un notario actúe

simultáneamente como notario y abogado en un litigio contencioso. *Id.*

No obstante, como excepción a la regla de incompatibilidad, se permite la función dual de abogado-notario situaciones limitadas: (i) acciones *ex parte*, (ii) acciones de jurisdicción voluntaria, (iii) recursos gubernativos, y (iv) cuando el notario solo haya autenticado las firmas de un documento antes del litigio y, en el pleito, ni las firmas ni el documento donde constan sean objeto de controversia principal. *Id.*

En lo aquí pertinente, en *Santiago v. Echegaray*, 137 DPR 1010 (1995), el Tribunal Supremo reiteró que un notario incurre en apariencia de parcialidad cuando, tras autorizar un documento público, reclama judicialmente la contraprestación a que se obligó otra parte en ese mismo instrumento, lo cual menoscaba la confianza en la institución notarial y en la fe pública. Sin embargo, la Alta Curia reconoció que, cuando el notario únicamente se limitó a dar fe de la autenticidad de firmas —sin redactar, preparar o analizar el contenido del documento—, actúa como "testigo silente" y no asume responsabilidad ni incurre en conflicto si luego representa a esa parte en un litigio. Por consiguiente, sostuvo el Foro Supremo que no procedía la descalificación de un abogado-notario cuando la autenticidad de las firmas no está en controversia y ni la firma de una parte ni el documento constituyen objeto principal de la reclamación, toda vez que, al limitarse a autenticar firmas en un documento privado, el notario no asume responsabilidad sobre su contenido.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En esencia, los peticionarios alegan que el foro de instancia erró al descalificar al Lcdo. Virgilio Ramos Tomasini bajo la conclusión de que representó legalmente a Wightman & Farina, LCC al autenticar la firma de una persona en dos resoluciones corporativas de dicha compañía.

Conforme explicamos en el acápite II de esta *Sentencia*, nuestro ordenamiento jurídico establece, como regla general, la incompatibilidad entre las funciones de abogado y notario. Véase, Regla 5 del Reglamento Notarial, *supra*. Sin embargo, de manera excepcional, permite que un notario que únicamente haya autenticado las firmas de un documento privado luego represente, en un litigio contencioso, a la parte otorgante, siempre y cuando ni las firmas ni el documento en sí estén en controversia o constituyan el objeto principal de la reclamación. *Id.,* además, véase *Santiago v. Echegaray,* supra. Es decir, si las firmas o el documento en cuestión están en controversia o constituyen el objeto principal de la reclamación, el abogado-notario puede ser descalificado. *Id.* Ello, con el propósito de evitar actos disruptivos por parte del representante legal en el trámite del pleito y, a su vez, evitar posibles infracciones a las Reglas de Conducta Profesional de Puerto Rico y evitar. *Oril v. El Farmer, Inc.,* supra. Así pues, una vez se presenta una solicitud de descalificación de un abogado, esta no procede de manera automática. Ante ese escenario, el Tribunal debe evaluar la totalidad de las circunstancias, lo cual incluye: la legitimación, la gravedad de la falta, la complejidad y la etapa del caso, si la solicitud dilata los procedimientos y si causara un perjuicio indebido a la parte que la presenta. Véase, *Oril v. El Farmer, Inc.,* supra; *Job Connection Center v. Sups. Econo,* supra.

En el caso de epígrafe, los recurridos solicitaron que el Lcdo. Virgilio Ramos Tomasini fuera descalificado como representante legal de los peticionarios. En atención a ello, el foro de instancia

celebró una vista para atender dicha solicitud y, posteriormente, emitió una *Resolución* por escrito en la cual concluyó que procedía la descalificación preventiva del Lcdo. Virgilio Ramos Tomasini. Ello, debido a que no tenía certeza de si las resoluciones corporativas constituían un asunto en controversia y la reclamación ante su consideración requería la concesión de remedios vinculados a la corporación.

Nótese que el foro de instancia expresó que no se ha demostrado que las resoluciones corporativas autenticadas por el Lcdo. Virgilio Ramos Tomasini, o las firmas allí consignadas, estuvieran en controversia o que constituyeran el objeto principal de la reclamación. En otras palabras, el tribunal reconoce que no existe fundamento concreto o específico para ordenar la descalificación, pero aun así la decreta de forma preventiva en atención a la solicitud presentada. Resolvemos que, a falta de esa demostración, no existe razón para concluir que hay incompatibilidad entre las funciones de abogado y notario que justifique la descalificación del Lcdo. Virgilio Ramos Tomasini. Por tanto, concluimos que erró el foro de instancia al descalificar al licenciado sin contar con los fundamentos necesarios que justificaran la imposición de un remedio tan drástico y excepcional. Recordemos que el remedio de la descalificación no debe imponerse ligeramente, ya que podría afectar negativamente los derechos de las partes, el trámite de los procedimientos el derecho a la libre selección de representación legal y los derechos del representante legal que es descalificado. *Job Connection Center v. Sups. Econo,* supra.

**-IV-**

Por los fundamentos expuestos previamente, se **expide** el auto de *Certiorari* y se **revoca** la *Resolución* recurrida. En consecuencia, se **devuelve** el caso al foro de instancia para la continuidad de los procedimientos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones